No. ——

First Circuit

---

## DiSALVO v. NICOLOSI

---

(June 26, 1926. Opinion and Decree.)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Automobiles—Par. 8.**

The burden of proof is up to the plaintiffs to show fault and negligence of the defendants in causing the wreck of an automobile.

2. **Louisiana Digest — Automobiles — Par. 4, 7.**

Where the evidence clearly shows that the wreck of an automobile was due to excessive speed of the driver and not to any negligence of the defendant driver of another automobile which he was passing, there can be no recovery of damages.

Appeal from the Thirteenth Judicial District Court of the Parish of Evangeline. Hon. H. Pavy, Judge.

Action by Mrs. Anna DiSalvo, for herself and minor children, against Paul Nicolosi.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Rownd & Warner, of Springfield, attorneys for plaintiff, appellant.

Reid & Blache, of Amite, attorneys for defendant, appellee.

ELLIOTT, J. Suit for damages on account of the death of plaintiff's husband and father of her minor children, due to the automobile in which he was riding striking a telephone pole, the petition alleging that it was due to the fault and reckless conduct of defendant's minor son.

The plaintiff, acting for herself as widow in community of Tony DiSalvo and as mother of his minor children, alleges the death of her husband, the father of her children, brought about by the reckless conduct of Pino Nicolosi, minor son of defendant, in driving an automobile belonging to defendant. Defendant denies that his son was negligent in the matter and alleges that the death of plaintiff's husband was due to the fault, careless and reckless conduct of Louis DiSalvo, minor son of the plaintiff and of Tony DiSalvo, deceased, in driving an automobile belonging to the deceased.

The district judge decided in favor of the defendant. The plaintiff appealed.

The evidence shows that a concourse of friends, relatives and connections had assembled at the residence of Charlie Danna. After a while spent at the residence of Charlie Danna, they decided to visit Tony Danna. For the purpose of getting to Tony Danna's they divided into two parties, one party going and starting first in an automobile belonging to Paul Nicolosi and driven by his minor son, Pino Nicolosi. The balance of the party followed soon afterwards in an automobile belonging to Tony DiSalvo, driven by his

minor son, Louis DiSalvo, in which Tony DiSalvo was also riding, sitting on the front seat with Louis DiSalvo. The DiSalvo car was a much faster and more powerful car than the Nicolosi car. In order to reach the residence of Tony Danna, it was necessary when about opposite and perhaps a little east of the Florida Parish Fair Grounds Association on the Baton Rouge and Hammond Highway, to turn out of the highway into another road. There is a culvert crossing on the side of the highway a few yards west of the place where it was necessary to leave the highway, in going to Tony Danna's, consisting of a pipe laid in the shallow ditch and through which the drain runs; the height of the culvert or pipe does not appear. Louis DiSalvo testifies that as he came up behind the Nicolosi car that Pino Nicolosi signaled to him with his hand to pass. That upon getting the signal he speeded up for the purpose, but when he got up close, and too close to check his car, that the Nicolosi car was suddenly swerved out into the road immediately in front of him in such a way that in order to keep from running over the car in front of him he was compelled to turn his car down into the ditch on the side of the road, that he did not notice the culvert in the ditch, that his car struck the end of the culvert and mounted it, but the bound and jerk was so great that his car could not be controlled and ran on without guidance until it struck a telephone pole on the side of the road, the impact demolishing the car and precipitating from it all who were in it; that his father, Tony DiSalvo, was so badly injured in the wreck that he died as a result of his injuries. That his action in going down into the ditch was compelled by the fault of Pino Nicolosi. His testimony is corroborated by that of two boys, both of whom say that they saw the wreck from the side of the road nearby, that the driver of the car ahead signaled to the driver of the car coming up behind to pass, but that when the car behind attempted to pass, the car in front sheered out in front of the car behind in such a way that it was compelled to either run over the car in front or take the ditch. That the car behind took the ditch, struck the pipe culvert, bounded up over it and continued on until it struck a telephone pole against which it was wrecked, etc. Pino Nicolosi and all of the occupants of the car he was driving, some four or five besides himself, as well as four occupants of the DiSalvo car contradict this testimony of Louis DiSalvo and the two boys. The occupants of the Nicolosi car admit that they knew the DiSalvo car was due behind them, as they were all going to Tony Danna's; but they declare that they did not know that it was close behind them, that they did not hear or see it, that Pino Nicolosi did not give any signal to pass, but that as he approached the place where he was to turn out of the highway and take the road to Tony Danna's that he held out his left hand from the side of the car as a signal to anybody who might be behind that he was about to swerve for the purpose of turning out; that he did this and turned out into the road to Tony Danna's, but about the time he did so they heard a noise behind them. That Pino Nicolosi stopped and they looked back and saw what had happened. They all absolve Pino Nicolosi from fault. One man and two women riding in the DiSalvo car stated as witness that when Louis DiSalvo got into the straight stretch of road leading by the Fair Grounds, he saw the Nicolosi car about a half a mile ahead and speeded up, so he said, for the pur-

pose of overtaking and passing it before they reached the place to turn out of the highway in order to go to Tony Danna's. That his speed became so great that they urged him to desist; but he persisted, and the first thing they knew the car struck the pipe culvert in the ditch, made a terrific bound and struck the telephone pole on the side of the road. Another party riding in the DiSalvo car says that Tony DiSalvo, who was sitting on the front seat by his son, seeing the Nicolosi car ahead, told his son to drive up and pass it before it reached the place to turn out; that the son speeded up to the pitch stated at the suggestion of the father. Louis DiSalvo denies that any of the occupants of his car expressed alarm at his speed and requested him to desist, and denies that his father told him to drive fast and pass the car ahead; but he stands alone in doing so; not one of the other occupants of the car he was driving and in which they were riding as his father's guests took the stand to support his denials, etc. It is argued that the two boys who saw the wreck are more reliable guides as to the facts than the occupants of the two cars, but we do not think so. In fact, the physical results of the impact of the DiSalvo car with the telephone pole supports the occupants of the DiSalvo car that it was running so fast that it was beyond control and could not be checked when it came up behind the Nicolosi car and that car sheered out in the road for the purpose of turning into the road to Tony Danna's. The mechanic who examined the DiSalvo car after the wreck found that the six-cylinder engine had been driven back from its base about 7 or 8 inches. Our conclusion is that the DiSalvo car at the time it was wrecked was being driven so fast that it could not be checked when it became necessary to do so on account of coming up behind a car that swerved out in the road for the purpose of turning into another road, but due to high speed had to turn aside to keep from running over the car in front and in turning into the shallow ditch under high speed for the purpose of passing the car in front and getting into the road ahead of it; the pipe culvert caused the car to bound up and before guidance of it could be resumed it struck the telephone pole on the side of the road. The burden of proof is upon the plaintiffs to show fault and neglect causing the wreck in the defendant. The evidence does not establish that the wreck was due to the fault of the driver of defendant's car. The finding of the district judge is correct.

Judgment affirmed. Plaintiff and appellant to pay the cost in both courts.